IN THE IOWA DISTRICT COURT IN AND FOR UNION COUNTY

| | |
|---|---|
| DARLA PARKER, | Case No: _____ |
| Plaintiff, | |
| v. | |
| | PETITION AT LAW |
| GREATER REGIONAL HEALTH, | AND JURY DEMAND |
| Monte Neizel, Amy Rieck, Shari Mitchell, | |
| and Faith Hahesy, individually and in | |
| their official capacities. | |
| Defendants. | |

**COMES NOW** the Plaintiff, Darla Parker, by and through her undersigned counsel, and for her Petition and Jury Demand against Defendants Greater Regional Health, Monte Neizel, Amy Rieck, Shari Mitchell, and Faith Hahesy states as follows:

## **VENUE & JURISDICTION**

1.      The unlawful acts alleged below were committed in Union County, Iowa.

2.      The amount in controversy exceeds the jurisdictional requirements of the Iowa District Court in and for Union County.

## **PARTIES**

3.      Plaintiff Darla Parker (hereinafter "Parker") is and was at all times material hereto a citizen and resident of Shannon City, Union County, Iowa.

4.      Defendant Greater Regional Health hereinafter "GRH" is an Iowa Corporation with its principal place of business in Creston, Union County, Iowa.

5.      Defendant Monte Neizel was at all times material to this matter the Chief Executive Officer of Defendant GRH.

6.      Defendant Faith Hahesy was at all times material to this matter Parker's immediate supervisor.

7.      Defendant Shari Mitchell was at all times material to this matter Parker's departmental supervisor.

8.      Defendant Amy Rieck was at all times material to this matter GRH's Human Resources Director.


## CONDITIONS PRECEDENT

9.      On or about October 6, 2020, within 300 days from the date of the last act of discrimination, Parker filed a Complaint of disability discrimination with the Iowa Civil Rights Act of 1965, as amended, Chapter 216, Code of Iowa (2021) against Defendant GRH, which was cross-filed with the Equal Employment Opportunity Commission. A copy of said charge is attached hereto as Exhibit "A" and its contents are incorporated herein.

10.     The Iowa Civil Rights Commission has issued Parker an Administrative Release (Right-to-Sue Letter) and has timely commenced this lawsuit within 90 days of the issuance of the Administrative Release as copy of which is attached hereto as Exhibit "B".

11.     Parker has complied with all conditions precedent to the filing of her claims against Defendant.

## COUNTS I & II: INTERFERENCE & RETALIATORY TERMINATION
### 29 USC § 2614 and 29 USC § 2615

12.     Parker repleads the allegations above as if fully set forth herein.

13.     GRH is an "employer" as defined in the Iowa Civil Rights Act, Iowa Code Chapter 216 (Section 216.2(7)).

14.     Parker began employment with Defendant GRH on or about August 2, 2006 as a Switchboard Registration Clerk at Defendant's facility in Creston, Union County, Iowa.

15.     Parker has been diagnosed with and suffers from Lupus Nephritis class III and V, an autoimmune disorder affecting the kidneys, heart, skin, eyes, brain, and hands.

16.     Since the date of Parker's employment, she has held several positions at GRH including: Switchboard Registration Clerk, Precertification Clerk, Cashier, Orthopedics Clinic Receptionist, Specialty Clinic Patient Access Representative, and Audiology Receptionist. At the time of Parker's termination, she was both a Specialty Clinic Access Representative and the Audiology Receptionist.

17.     Upon information and belief, Parker was the only employee trained for the specific duties required for the Audiology Clinic at that time.

18.     Parker's duties as an Audiology Receptionist included: received and routed all incoming audiology calls, verified eligibility and benefits with insurance companies, explained benefits to patients and collected payment from patients for hearing aids and surgery balances, maintained a leger of payments and benefits, maintained the audiology schedule, forwarded paper and electronic claims to insurance companies, and followed-up with insurance companies regarding any discrepancies in payment. This position was full-time and absorbed upwards of 85% of Parker's average workweek prior to May 11, 2020.

19.     Parker's duties as a Specialty Clinic Patient Access Representative included: received and routed general Specialty Clinic calls; verified patient demographics; scheduled appointments for walk-in radiology and laboratory patients; made follow-up appointments for obstetric/gynecology, pain management, urology, podiatry, ENT and pulmonology; and processed payments. This position was also fulltime and typically absorbed 15% of her workweek as there were several other staff members who held similar, if not identical, positions.

20.     From approximately March 16, 2020 to April 2, 2020, due to the onset of COVID-19, Parker was using her paid time off ("PTO") to quarantine.

21.     On or about March 30, 2020, Parker discussed her autoimmune disorder with Faith Hahesy, Patient Access Supervisor and Parker's immediate supervisor and Hahesy's assistant, Nikki Little.

22.     On or about March 30, 2020, Nikki Little texted Parker, "Are you concerned about being around people?" Parker answered, "Yes."

23.     On or about April 2, 2020, Parker returned to work. Amy Kelsey, the director of Health Information Management Service, discussed a March 20, 2020 HIPAA violation that occurred while Parker was out of the office on PTO. Faith Hahsey asked Parker if she had bullied Amelia Quick into participating in the HIPAA violation at Parker's request.

24.     On or about April 8, 2020, Dr. Nelson Leung, Parker's longtime physician, provided a letter outlining Parker's Lupus diagnosis and requesting leave under the Family Medical Leave Act (hereafter "FMLA").

25.     On or about April 8, 2020, Parker was granted FMLA leave.

26.     On or about April 9, 2020, Amy Rieck and Faith Hahesy called Parker while she was on FMLA leave. They told Parker that she would receive a three-day suspension for the March 20, 2020 HIPAA violation.

27.     On or about April 10, 2020, Parker contacted Faith Hahesy regarding the handling of her audiology duties while she was away.

28.     Upon information and belief, most, if not all, of the Audiology tasks were not completed while Parker was on leave and most, if not all, duties for that Clinic had been put on hold.

29.     On or about May 1, 2020, Jen Kenyon, a Human Resources Officer, contacted Parker and advised her that the long-term disability group did not recognize auto-immune disorders during COVID -19 as a long-term disability under FMLA. Therefore, Parker was told that her short-term disability would end on May 9, 2020.

30.     Parker received several calls over the course of her FMLA leave from Dr. Ryan Denny, the Audiologist, Faith Hahesy and Nikki Little inquiring as to Parker's anticipated return date. These calls and the fact that the Audiology clinic work was not being delegated to anyone else put pressure on Parker to return to work despite paid time off that she had earned and could use to extend her period of leave during COVID-19.

31.     On or about May 4, 2020, Parker provided Faith Hahesy with a letter from Dr. Nelson Leung releasing her to return to work provided proper hygiene and safety precautions were followed.

32.     Upon information and belief, between May 4, 2020 and May 11, 2020, Parker and Faith Hahesy spoke about Parker's return date, safety concerns, and duties upon returning to work.

33.     Faith Hahsey informed Parker of the following plan for her return: Parker was to return to work on May 11, 2020, Parker would be working at the front desk rather than her previous audiology desk, she would be primarily focused on the general receptionist duties (6 hours per day) while her audiology work would be relegated to 1 ½ - 2 hours of her day. Faith Hahsey explained that most of the Audiology duties would be divvied up between two different departments, therefore, Parker would not need to devote as much time to those duties.

34.     Upon information and belief, Parker was the only employee trained for Audiology duties at any time during her tenure at GRH. Jenny Gray and Amelia Quick had begun training for Audiology duties but had not received all the training necessary to complete the required duties.

35.     Upon information and belief, Faith Hahesy had not received any training specific to Audiology clinic.

36.     Working at the receptionist desk placed Parker within 4 feet of her nearest co-worker while her previous desk for Audiology was isolated in a separate space, over 12 feet from the nearest co-worker. Furthermore, there was no plexiglass separating patients from employees.

37.     On or about May 11, 2020, Parker returned to work full-time at GRH.

38.     Upon returning to work, Parker was seated at the front receptionist desk which was shared with two other employees. Only the bare essentials had been covered for the Audiology Clinic and Parker had a significant list of follow-up items to resolve. When Parker attempted to complete the allotted 1 ½ - 2 hours of Audiology work at her previous desk, Faith Hahesy called her on the phone and asked in a disgusted tone, "what are you doing?" Faith Hahesy told Parker that she needed to return to the receptionist's desk at the front of the clinic.

39.     On or about May 11, 2020, Parker apologized to Amelia Quick about the March 20, 2020 HIPAA violation. Amelia Quick stated that she did not feel that Parker had bullied her and assured Parker that it was alright.

40.     On or about May 12, 2020, at a group meeting, Parker informed Faith Hahesy of an issue with three Audiology accounts that occurred while other departments had been tasked with completing Audiology claims. Parker was able to successfully recoup $1,900 for each account where a write-off had been applied erroneously.

41.     Upon information and belief, between May 26 and May 29, 2020, Faith Hahesy did not allow Parker to use paid time off or low census status despite the conditions being appropriate.

42.     On or about June 8, 2020, Parker searched for a specialty form for a patient in a portion of the desk where her co-worker, Jenny Gray, typically sat. While in a drawer, she noticed that there were several forms and notes that contained Protected Health Information that should have been kept in a secure, locked drawer. The next day, when Jenny Gray returned, Parker reminded her that she should keep those forms in an appropriate secure fashion.

43.     On or about June 15, 2020, Parker was called to a meeting with Faith Hahesy and Amy Rieck. Amy Rieck told Parker that her discussion with Amelia Quick about the HIPAA violation had been perceived by Amelia Quick as Parker being hostile. Faith Hahesy and Amy Rieck also asked about the June 8, 2020 incident in which Parker found Protected Health Information in Jenny Gray's desk drawer.

44.     On or about June 16, 2020, Parker was again called to a meeting with Amy Rieck and was terminated.

45.     Defendants discriminated against Parker based on her disability in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216, by treating her differently than they treated employees without disabilities who engaged in similar conduct.

46.     Defendant GRH terminated Parker because of her disability in violation of The Iowa Civil Rights Act, Iowa Code § 216.6.

47.     Defendants, in terminating Parker, wrongfully retaliated against Parker for engaging in a protected activity as a person with a disability and for requesting accommodations.

48.     Parker qualified for, requested, and exercised her right to FMLA leave during the COVID-19 pandemic where she had Lupus, a recognized disorder under FMLA, her doctor validated her condition, and she remained on leave for the duration of the FMLA granted leave.

49.     Parker requested that she be allowed to complete her work at a station farther away from her fellow employees and patients. Her reasonable request was denied.

50.     Parker took responsibility for and addressed her HIPAA violation when she acknowledged her mistake to her colleague and her supervisors.

51.     Defendant, in changing the duties of her position and in subsequently terminating Parker, unlawfully discriminated against Parker in retaliation for taking FMLA leave in violation of 29 USC § 2614 and 29 USC § 2615.

52.     Furthermore, Defendant failed to support Parker's time on FMLA leave in violation of 29 USC § 2614 and 29 USC § 2615 by pressuring her to return and failing to meaningfully cover her duties while she was on leave.

53.     As a proximate cause of Defendant's illegal conduct, Parker has suffered damages, including loss of income and benefits in the past and future, humiliation,

embarrassment, anxiety, other emotional distress, and physical discomfort due to flare-ups of her chronic condition made worse by stress.

## COUNT III: FAILURE TO ACCOMMODATE
### 42 USC § 12111

54.     Parker repleads the allegations above as if fully set forth herein.

55.     Defendant denied Parker's requests to use her paid time off and low census status in order to avoid direct contact with patients during COVID-19 and reduce her risk of a flare-up of her Lupus in violation of 42 USC § 12111.

56.     Defendant failed to allow Parker to use a countertop farther from her co-workers in violation of 42 USC § 12111.

57.     Defendant was required to provide reasonable accommodations for Parker as a person with a disability under the Americans with Disabilities Act of 1990.

58.     The requested accommodations were reasonable in that they would not have created undo hardship for the Defendant nor would they have been overly costly to implement.

59.     As a result of these failures to accommodate, Parker has suffered emotional and physical distress.

**WHEREFORE**, Plaintiff Darla Parker prays for judgment against Defendant GRH in an amount that will fully and fairly compensate her for her damages, including damages for past and future lost wages and benefits, past and future emotional distress, and reasonable attorney's fees

and costs, with interest as provided by law, and such other and further relief as the Court deems

just and equitable.

## JURY DEMAND

60.     Plaintiff hereby requests a just trial in this matter

Respectfully submitted,

David H. Goldman
*/s/ David H. Goldman*
Sierra Meehan Strassberg
*/s/ Sierra M. Strassberg*
**BABICH GOLDMAN, P.C.**
501 SW 7th Street, Suite J
Des Moines, IA 50309
Telephone: (515) 244-4300
Facsimile: (515) 244-2650
Email: dgoldman@babichgoldman.com

**ATTORNEYS FOR PLAINTIFF**